The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. I say the United States and the Honorable Court.  Be seated, please. All right. The first case we're going to hear this morning is United States v. Dugan and Ms. Morgan, we'll hear from you. Thank you. May it please the Court. My name is Shawn Morgan and I'm honored to represent Raymond Dugan in this appeal. Mr. Dugan is appealing his conviction from the Southern District of West Virginia for one count of a superseding indictment, which charged him with access with intent to view child pornography. He alleges two errors that warrant reversal of the conviction. First, the district court's error in denying his motion to compel the government to produce discovery to him under Rule 16 and pursuant to Brady. And second, in denying his motion to suppress evidence, particularly everything that derived from the search warrant that was at issue in the case. And the search warrant really underpins the motion to compel as well. There is a secondary set of arguments that's less important to Mr. Dugan regarding the issue of restitution and whether there was sufficient causal connection to award a higher restitution amount as to three of the victims. But I would like to focus my time here today on the more important issues to him, which are the issues of constitutional magnitude arising from the denial of his attempts to obtain information about the underpinnings of the government's case against him in order to be able to use that information to seek suppression of that  This case arose because of a tip from a foreign law enforcement agency to the FBI and the Homeland Security. And that tip was a tip that said that on May 25, 2019, an IP address, a particular IP address was used to access a website that contained child sexual abuse material. When that information was conveyed to the FBI, it was conveyed as part of a single tip in August of 2019. And in addition to supplying that information about the IP addresses connection to the website, there was also a pretty nominal discussion about the federal law enforcement agency's investigation. And particularly, it talked about how the information that the federal law enforcement agency obtained was obtained, quote, through independent investigation that was lawfully authorized in the foreign law enforcement agency's country pursuant to its national laws. Beyond that tip, there was a discussion in the search warrant about the long history of cooperation between... You mean in the affidavit? In the affidavit, in the affidavit. Yes, Your Honor, in the affidavit. There was a discussion about the long history of cooperation between the foreign law enforcement agency and the United States in criminal investigations, the history of information sharing, and the inclusion of that information sharing and extension of it to investigations of this type. Let me ask you, have you seen our recent decision in Sanders? I have. I've spent a lot of time with the Sanders decision. Have you compared the affidavit in Sanders with this affidavit? I have, I have. And they're almost identical, aren't they? I would disagree with that. They are very similar, but there is a key distinction. Okay. And the key distinction is that provision that I just shared with you about the nature of the foreign law enforcement agency's activity. Sanders is different in the sense that the tips that were at issue in Sanders, and there were three related tips in that case, while there was one here. But in Sanders, the information about the IP address, the foreign law enforcement agency told the United States, which included in the Sanders warrant, quote, this information was lawfully obtained using a warrant. So there was a warrant underpinning the provision of the tip by the foreign law enforcement agency in Sanders. And that's different from the warrant at the affidavit that supported the warrant in Mr. Dubin's case, which did not specify that a warrant had been obtained by the foreign law enforcement agency in its own country, but rather that the agency in that country was using independent investigation that was lawfully authorized. That's a significant point because it... What is it? Let me ask you this, just as a matter of understanding the applicable principles here, what if the foreign, is the country involved public? Did we write who it is? I mean, there's nothing secret about that, is it? There is a protective order in the case, Your Honor. I am aware of what that country is. I can share it with you. Well, I am too. I mean, it's all over the record, I think. But anyway, that country has its law enforcement and let's assume it obtained that illegally in that country. It was on the network illegally, TOR network. I guess that's what we're talking about, and somehow violated some domestic law there or something, but they had the information. We didn't participate in that or even know of that beforehand, and yet they have the information now and they say, we have discovered that this address has been frequent in the pornography site. And the FBI then follows that up saying this has been a reliable agency. They've been dealing with this agency over the years for, I mean, it's happens to be a good ally and this type of thing, very trustworthy. That's not an issue. And they pursue the site and go to a judge. The judge gives a warrant and the rest is history. My question is, does our law require that the country that obtained the information comply with the federal constitution? It should, Your Honor. And here's why. Your answer is yes? Yes, because the federal law enforcement agency in this case. So you're saying Judge Goodwin had to be satisfied that this thing satisfied our law? Yes, yes. What case do you have to support that? Well, here are a number of cases. We kidnap people, even kidnap people out of the country and bring them in for a trial, and we don't go through local agents. The Supreme Court has actually approved that and we have the piracy statutes where, I mean, the piracy prosecutions where there are no process being followed under our constitution to pick these people up in Ethiopia, Somalia. I mean, I don't quite know what the principle is that information, as long as we hadn't participated in illegality, we just, we're just receiving the information and it turns out that that information was, would not have been obtained legally under our constitution. Domestically, we don't know. And you're saying there's a law that says or a case that says we can't use it? It goes back to the underpinning of Mr. Dugan's motion to compel in the first place. Well, stick to my question. Sure, sure. Why can't the FBI use information that it receives from another country as long as it didn't participate or know of any illegality as it was being developed? The reason that it shouldn't is because in this case, Mr. Dugan has alleged that there was a joint venture and he's made a plausible showing of that. Let's stick with my hypothetical for a while so we can get the principle. We can talk about this case. My question to you is, are we barred from using information, reliable information that we trust from another country that was obtained illegally in the other country if it were under our constitution, but we didn't participate in it and didn't know it? I'm struggling with the hypothetical because it's so different than the circumstances that we're facing here today. The answer is hypothetical at this point. Sure. So hypothetically, if the foreign government acted illegally- Under whose law? Under its law, but where we are here is we don't- Let's stay away from this case for a minute. I want to understand this principle because the whole argument may depend on it. So the question is, let's say a foreign country obtains it legally under the country's law, but it would violate our constitution. They obtain that information and provide it to us. We didn't participate in their obtaining it. Are we barred from using it? We're not barred from using it if we are not part of a joint venture. And I'm sorry, but that keeps taking me back to- Okay, so that's fair enough. By that, you mean if we weren't involved, if we weren't in the middle of it. Right, right. So we can take it from the foreign country and use it. But what use can we make of it? And to what extent is a defendant constitutionally permitted to look behind that curtain to confirm that his rights have not been violated? What right? That's my whole point. In other words, there is a tip comes in, unsolicited tip comes in from the foreign country, the intelligence of the foreign country and says, we have information that this particular website was used to access pornography. Comes the FBI. The FBI says, we've had long dealings with this agency and it's always been trustworthy and been accurate and we intend to rely on it. They use that to trace down the computer in the United States. Now, my question is, that's not a joint venture under that hypothetical. And if that's not a joint venture, that would be appropriate, right? If that's not a joint venture. Okay, the joint venture would be, is if the United States asked, do you have anything here or helped it or sent the name to them? How do you talk? How does a joint venture work? Well, that's why Mr. Dugan is seeking to compel because in this type of scenario, what we're talking about are long-term investigations of computer networks throughout the world and information sharing back and forth, back and forth. How do you know it's information sharing? Well, because of the search warrant affidavit that talks about the long history of cooperation between the United States government and this foreign law enforcement agency. What plausible showing did Mr. Dugan make? So, the plausible showing he made is that with respect to the TOR, even in the search warrant affidavit, it makes clear that the way that the TOR browser and the TOR network works, there is no ordinary investigative means that can be utilized to identify an IP address. So, it begs the question of how is a foreign law enforcement agency able to identify this IP address if, as is set forth in the affidavit, there was not an accessing or invasion of a computer device in the United States. There must have been, given the way that the TOR browser works and the United States spent pages in the affidavit talking about TOR and its complexity, there had to have been some type of action by the foreign government that Mr. Dugan should be allowed to investigate. For example... Well, they're going on to the TOR network in their country and they're going in there and they see a bunch of different sites that have accessed child pornography and they copy down the numbers and provide that information to other countries for enforcement of their laws. The question is, they're in a totally different country. They're going on to the internet. It's not impossible to get into TOR. I think it's just hard. I mean, the fact it was, they did get into TOR and they did discover computers that have accessed TOR and they didn't have to go to the American computer. It appears on the site in TOR where the access is shown in the TOR network and you're asking us to order an investigation into this other country's intelligence gathering. Not exactly. Not exactly. TOR is a little more complex than that. I know, but we have to be focusing on the role of the FBI and the FBI or Department of Homeland Security. I don't know which one it was here, but our law enforcement agency, the question is, were they involved at all in getting this off the TOR site? And the answer is no, they received the tip from this country. That's what the affidavit says. But to the extent that there is a relationship between the FLA and the FBI, to the extent that there are information sharing protocols, to the extent that there is an agreement between the countries on how they will do this so that the information can be obtained in a way that it's useful to the FBI, Mr. Dugan is entitled to know that. And I would argue that he's entitled. You're saying he was entitled to know that when the affidavit was presented to the magistrate judge? The magistrate judge had to tell him to go back and give him a 65-page affidavit and he's got to tell him to go back and give him more information? What should have been included in the affidavit, Your Honor, is information that tied this case more directly, this affidavit more directly to Mr. Dugan. Was it tied directly to him? Well, only to the extent that there was a tip that on a particular day, a single occasion, that an IP address... And the issue was a probable cause. The issue was probable cause. And the magistrate judge was satisfied, and the district judge was satisfied, without going into all this background investigation of the investigation. But he makes a plausible showing by arguing that it's material to him because to the extent that there is a joint venture, and to the extent that the foreign government is doing at the United States' request... But you're saying there's a joint venture, and at Sanders' case, we said, well, that's just guesswork. We objected to that. Summarily. I understand. I understand. But because of the... That's published. It is. Aren't you... You're stuck with it. I am stuck with it. But I'm distinguishing it on the basis that Mr. Dugan's circumstances are different because Mr. Dugan is arguing that, but for a joint venture between the Foreign Law Enforcement Agency and the United States, there could not have been a warrantless search of his computer by a foreign government, and therefore... There was no evidence that the foreign government went into his computer. The foreign government said, basically, that they had access to the tour site and discovered that this computer site accessed the pornographic site. And it was the local law enforcement in the United States that used the computer site to trace it down to the defendant in this case. The foreign government was not that specific, and the affidavit is not that specific. We do not know whether the Foreign Law Enforcement Agency was using software that allowed it to identify the IP address. We do not know whether the Foreign Law Enforcement Agency was using some type of computer code that it had embedded in the site that would allow it to send information to people accessing the site and then retrieve back from that the IP address. We don't know whether the Foreign Law Enforcement Agency installed malware that allowed it to get to that result. The problem with that is that in the United States, a warrant would have been required for all of those things. Specifically... But I thought you agreed that the foreign nation is not subject to our Constitution. Unless there's a joint venture between... Well, you don't have any evidence that the United States participated and said, we suspect this guy, help us out. Or that they provided a name to the agency. The information is that out of the blue, this foreign agency informed the United States of this information. Simple information. This computer site accessed Tor, which had child pornography. And that's what they revealed. And that's it, right? That's all that they revealed.  And under... because you keep going back to this warrantless search by the foreign agency. But, I mean, we have a case, I think it's Abu Ali. It clearly says that they are not subject to our constitutional criminal procedures. Unless there's a joint venture. What Abu Ali says, and goes back as well to the Stokes District, the Stokes case from the Seventh Circuit, if United States agents substantially participate in an extraterritorial search of a U.S. citizen, and the foreign officials were essentially acting as agents for their American counterparts, or the search amounted to a joint operation between the American and foreign authorities, the Fourth Amendment generally applies. These types of investigations are just that type of investigation, where there is an extraterritorial investigation by a foreign government. The United States conducted its investigation entirely in the United States, and it acted on a tip received from a foreign government. It did not request the foreign government for that information. They have shared information as it arises. But there was no participation by the FBI or Homeland Security into seeking this information out. It was discovered by the foreign government on the Internet, and the information provided by the FBI and the FBI, Homeland Security, excuse me, acted on it. And from that point, the affidavit describes how they narrowed it down to a particular home, and the search warrant, of course, uncovered it. I respectfully disagree with that position. Well, tell me what's wrong. Well, it's, it's wrong. In the affidavit, show me where. Well, that's, that's the problem. The affidavit does not contain that information. All the affidavit says is... Where are you getting your information, then, that you think that we were acting as, that the foreign government was acting as our agent, or there was a joint venture? What evidence do you have of that? So, the affidavit itself talks about the long history of cooperation and information sharing, including in child sexual abuse material or child pornography type investigations. This is a circumstance where there was information sharing about online electronic activity involving an IP address in the United States. And I, I know the court is taking a broad view. So, are you suggesting that every investigation that the United States doing this cooperation, when they're cooperating with these foreign nations, are you suggesting that all of those are joint ventures? I'm suggesting that the defendant is entitled to discovery to ascertain whether that joint venture exists or not. And that was completely foreclosed in this case because the court, the Mr. Dubin could affirmatively come forward with information, which is known only to the government and held only by the government, then he cannot raise a challenge here. And if he can't under these circumstances, then I would posit that it never could happen. And if it never could happen, then we're in a situation where a foreign government can always just provide information to the United States that says, this is good enough for us. It should be good enough for you. And our government in turn relies upon it and tells a defendant exactly what Mr. Dubin was told here. You have to trust us that the underpinning of this case, because this whole case rises and falls on this tip. Okay. Why don't you wind up? I notice we're quite over. Thank you. Thank you, Your Honor. I would wrap up by saying that this court should distinguish Mr. Dubin's case from the Sanders decision. And in doing so, it should reverse his convictions and it should reverse the decisions denying his motion to compel and his motion to suppress. Thank you. All right. Ms. Wilson. Good morning. May it please the court. Holly Wilson on behalf of the United States of America. This court should affirm the district court's decisions denying the motion to compel and motion to suppress. This panel's decision in United States v. Sanders is controlling and dispositive on both of the discovery disputes at issue here. It seems that this court is most concerned with the motion to compel. So I will begin there. In light of Sanders, the court should find that the district court didn't, that there was no error and no abuse of discretion when the district court denied the motion to compel. The defendant's entire argument below that there was a joint venture wherein this foreign agency hacked into his computer was just a guess. It was unsupported by any evidence. Well, I'm not sure she alleges they hacked in. As a matter of fact, the affidavit contradicts that, that the foreign agent did not access the American computer at all. They just provided the information they discovered. I think her argument is because they have a history of exchanging information that that is in and of itself a joint venture. That means that we are, the United States is charged with all violations of American constitutional law by the other country. And there's absolutely no evidence of a joint venture. The representations in the affidavit that there is a history of cooperation and information sharing merely serves to bolster the reliability of the foreign law enforcement agency and cooperation alone is not enough to establish a joint venture. The Abu Ali case that Judge Benjamin mentioned requires that there be some showing of active and substantial participation by the United States in order to get to a joint venture. The evidence that was before the district court overwhelmingly goes the other way. The affidavit and Agent Fleener's testimony during the pretrial motions hearing both established that this was a completely independent investigation conducted by a foreign law enforcement agency. He actually testified that he had not spoken with the foreign law enforcement agency. And he also testified that he didn't have any more details beyond what had already been disclosed in discovery. And it's an, I want to... The he there is the affiant? Yes, your honor. That would be Agent Fleener. I apologize for any confusion. Real quick on the, why would this not, this Ritchie not be applicable here? The lower plausibility as to, as to her motion to compel? I apologize, your honor. I'm familiar. Are you talking about the Ritchie case? Yes, she's, she's the lower plausibility standard, this exception as to the motion to compel. Oh, I understand, your honor. Even accepting this lower plausibility standard, you have to have facts. There has to, there have to be facts in evidence. And this court's decisions in Caro and in Sanders both stand for that proposition. Conclusory statements are not enough. And that's for good reason. How am I supposed to get the facts? You won't get them to them. You have to gather them. Your honor, the defendant in this case had everything that he needed to go out and get facts. The TIP documents were disclosed six months prior to the pretrial motions hearing. He was aware of the identity of the foreign law enforcement agency. And he was aware of the, the TIP documents. He could have gotten evidence from a expert on computers about the likelihood of an intrusion into his computer. He could have gotten an expert that said that this country has a history of working in a joint venture with the United States and intruding on people's civil liberties. None of that was here. And that makes this case actually even easier than the Sanders decision. In Sanders, the defendant at least had expert declarations about the likelihood of an intrusion onto his computer. Of course, the defendant does not have to take the United States word for it. And he didn't in this case. But he, there was nothing beyond his attorney saying, well, I did some independent reading on the internet. And, and, and that's why I think this. It was just a hunch. There was no evidence. There have to be facts in evidence for the district court. And the facts that were before the district court overwhelmingly supported the conclusion that there was no joint venture and that the United States had not participated at all. And that there was no intrusion onto a U.S. computer. Because of that, the defendant has not met his burden under Brady and Rule 16. And the district court's decision on the motion to compel should be affirmed. There, I apologize. No, go ahead. If there are no further questions on the motion to compel, I'll just briefly touch on the motion to suppress. Sanders is very clearly controlling on the motion to suppress and the issue of probable cause. The court in Sanders decided that there were several pertinent facts that established, quote, beyond doubt that probable cause existed. All five of those facts, and there's a bullet list in Sanders, which I know this court is familiar with, all of those five facts are found in the affidavit that we're dealing with here today. If this court were to find that there was no probable cause, the good faith exception does apply. And as a threshold matter, I will just state that the defendant has waived his argument with respect to the good faith exception. Below, he merely argued that the agent had misled the magistrate. He did vehemently contest probable cause, but that was a general objection to the affidavit. Nowhere in the record below does it show that he contested that or made an unreasonableness challenge on the good faith exception. By all accounts, this affidavit is strong. It is 52 pages long. The district judge ruled specifically on good faith. Yes, Your Honor. Yes, Your Honor. Judge Goodwin did rule specifically on good faith. He dealt with it. He thought he had enough to deal with it. That's correct, Your Honor, and that's because the defendant below made the argument on misleading the magistrate. The defendant below did not make the argument that probable cause was so lacking that it would be unreasonable for an agent to rely on it, on the affidavit, on the search warrant. The arguments between no probable cause and unreasonableness, they're similar, but they are distinct. She says that the affidavit here is different than the one in Sanders because Sanders, I believe that's the argument that she made earlier, was that the affidavit in Sanders says that there was a, that the foreign government had a warrant, whereas here there was not. Your Honor, the affidavit here is almost identical to the affidavit in Sanders. Ms. Morgan is correct that our affidavit does not say that a warrant was obtained. However, it says that it was lawfully obtained in the foreign countries, under the foreign countries laws, and I'll submit, and while it's not in the joint appendix, the tip documents say that there was a warrant, two warrants, actually. So I don't believe that there's any meaningful distinction with respect to probable cause between the Sanders affidavit and the affidavit we're dealing with here today. If the court doesn't have any further questions, I'll just close by saying that this court should affirm the district court's decisions. Thank you. Ms. Morgan. I'd like to address first the government's position that Mr. Dugan could have obtained discovery. Here, I acknowledge that Mr. Dugan was supplied with the first four pieces of information that he sought in his motion to compel. He sought information about the identity of the foreign law enforcement agency, and he sought information about the identity of the target website, and he obtained that. But I disagree that he either had the obligation to, or could have, obtained the other information that he sought in his motion to compel, and that's sections 5 through 11 of his requests for additional information. He was specifically seeking information that was in the government's control about what it was that tied him to the IP address, what records, reports, files, logs, notes that they had that connected him to that. He wanted to know- You mean what tied the- The IP address. IP address. What would you expect? I mean, the IP address is connected to a computer, right? The computer issues that as metadata, and so the only question is to identify the location of the computer, right? That is what an IP address ultimately tells you, but the foreign government in this case advised the FBI and Homeland Security that it had information that connected him to this target website. Not him, it connected an IP address to the tour. And he said, what information is that? What information did the foreign government have, and how did they get it? I thought you said you were asking for information in the hands of the federal, our government. What I'm saying is that to the extent that they have it, or to the extent that they can get it, it's their obligation to share that. The affidavit reports the information received, which was an IP address and its connection to child pornography. And it said it was obtained under lawfully under its own laws, and it was obtained without access to the United States computer. Now, that information, the IP address was applied to the United States and then our law enforcement agencies linked it to the defendant, right? That's right. And there's no mystery about that. Is that how they did that? No, they did that using the affidavit that he is challenging and the motion to compel that he attempted to file to try to look behind the curtain and see what relationship is there between the United States and this foreign law enforcement agency. What agreements do they have about the sharing of information regarding the searching of electronic devices and what each country will do in those investigations that would allow him to establish the existence of the joint venture? Okay, that goes back to your joint venture argument. It does. I thought you were asking about how they determined that the IP address was connected to the defendant. That's what he was asking for. Okay, but that doesn't have anything to do with the joint venture. That has to do with how the Homeland Security linked the IP address to the defendant. No, Your Honor. The foreign government gave a tip that said it had linked the IP address that eventually our government linked to the defendant to this website. Right, I understand that. But you are complaining about not receiving evidence from our government about how it linked the IP address to the defendant. That's what you said. Yes. All right, how the IP address was linked to the defendant is a domestic investigation issue and it's not hard. I mean, it's done all the time. They linked it to the geographically to a house and then he got a search warrant. But he also challenged, Your Honor, the linking of the IP address to the target website and he sought information about that and he sought information about the connection as to these investigations between our government and the FLA. And he did that because it's material to his defense. How do we have control over the investigatory agency in the foreign country to tell that country to produce documents? Because the affidavit says the only information he received was, and it's all quoted there in the affidavit, is the IP address was linked to the which had a pornography on it and didn't even suggest how to use it. It just said this is information and we ran with it. To the extent that our government doesn't have it and can't produce it, I concede that they would not have it to produce it. But what they would have would be agreements between our government and the FLA about how the countries will cooperate and collaborate and share information about surveillance and monitoring of electronic communications originating from this country, which is what Mr. Dugan asked for below. They also would have information in addition to agreements about prior history of collaboration between the FLA and our government's agencies relating to policing of illicit activity on the Internet. And they also would have information about the specific technique that was used by the FLA to support that the IP address access the targeted website. How is, but cooperation and collaboration and sharing is not a joint venture. Well, I would argue that depending on what was revealed by the discovery that should have been produced that Mr. Dugan could have established that this joint venture existed. It's a very circular problem for him and that he's obligated to allege the existence of a joint venture with sufficient specificity to create a plausible showing. And he's attempting to do that by referring back to the affidavit about the long history of cooperation between the countries. But he can't get at the underpinning to establish what the full extent of that relationship is and what that collaboration is and what that, what we would argue agency relationship is between the two of them because he's not permitted to obtain it because he lacks the specific facts which you can't get. I think your red light is on. Oh, I'm sorry. I didn't see it. Thank you. We don't give tickets, but on the second try we do normally. Thank you. I understand you're court-appointed, is that right? That's correct, your honor. We very much appreciate that. I mean, your client appreciates it, but it's also very important to the system, as you know, and you've done a fine job. And we'll come down and greet counsel, proceed to the next case. Thank you, your honor. We're going to take a short recess. Come down and greet counsel and take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, DeAndrea Gist Benjamin